### BOYLE *v.* CITY OF SAGINAW.

1. MUNICIPAL CORPORATIONS—DEFECTIVE SIDEWALKS—NOTICE.

   Where injury was claimed from the negligence of a city in knowingly permitting a sidewalk to become and remain defective, it was not error to admit testimony showing the condition of the walk in close proximity to the place where the injury occurred, though the particular defect which caused the injury was pointed out; since such testimony was competent to charge the city with notice of the condition of the walk.

2. HUSBAND AND WIFE — AGREEMENT AS TO WIFE'S EARNINGS — MEDICAL SERVICES—PERSONAL INJURIES—DAMAGES.

   A wife, in an action for personal injuries, may recover for her medical treatment and her loss of services, where it appears that she was supporting herself under an agreement with her husband that she should have her earnings, and that the credit for the medical services was extended to her individually and solely, on her promise to pay for the same out of her separate estate.

Error to Saginaw; Snow, J.   Submitted April 13, 1900. Decided May 29, 1900.

Case by Catherine Boyle against the city of Saginaw for personal injuries.   From a judgment for plaintiff, defendant brings error.   Affirmed.

*Henry E. Naegely*, for appellant.

*John F. O'Keefe*, for appellee.

MOORE, J.   The statement of facts is taken largely from the brief of counsel for defendant.   Catherine Boyle, the plaintiff, brought suit against the city of Saginaw, the defendant, to recover damages for injuries she sustained on a defective sidewalk on October 29, 1898.   On the trial of the case she recovered a verdict of $1,000.   She was a married woman, and at the time of her injuries,

and previous thereto, she was a healthy woman, weighing 150 pounds, who always did her own housework, and, in addition, frequently did washing by the day for other people. She supported herself by her own earnings, her husband, for 15 years previous to this time, not having contributed to her support, though he did to the support of the children. She was the mother of 11 children, 7 of whom are alive, and the youngest of whom was 10 months old at the time of her injuries. The plaintiff lived on North Bond street, about three blocks southwest from the place where the injury occurred. She left home on the night in question, about 8 o'clock, to go to Stingel's meat market, which is several blocks from where she lived. The night was dark, and the condition of the walk was not familiar to the plaintiff. There were no artificial lights within a block or two to throw light on the walk on the west side of Stone street at the point where she fell. The plaintiff took the west side of Stone street, and went north to a point within five or six feet from the corner of Union street, when she stepped into a hole in the sidewalk, and fell. After remaining there a few minutes, she got up, and started to go, and took another step forward, when her foot was caught by a broken board, and she again fell forward, and hurt her hip and ankle. She called for help, and Mrs. Doak, who lived in the house in front of which she fell, came out with a light, and removed the board which held Mrs. Boyle's foot, and brought her to the stoop, where she sat a few minutes. Mrs. Boyle then went across the street to the store of Mr. Gager, and had him drive her home. She secured a doctor the Monday following the injury. She applied liniment and otherwise treated herself according to the doctor's instructions. She became nervous, and was sick more or less from the time of the injury to the trial. Previous to the injury she was strong and healthy, and did her own work and work for others, and had never been sick. She was a married woman, and it was agreed between herself and husband that she

should have her earnings for herself. This agreement was made about 15 years ago, and whatever she earned she collected and used for herself. After her injury, Dr. J. W. Freeman made one visit to her, for which she paid him $1.25. Dr. F. W. Freeman made three or four visits, which were charged to her. Dr. J. W. McMeekin called a number of times. She does not know how much she owes him for these visits, which were 16 or 17. The plaintiff earned about five dollars a week at times working for different people in the city. She spoke to Dr. McMeekin about his bill when he first came to visit her, and said she would pay him in a short time. He told her he could wait for his pay. She told him she would pay him herself, and the account was charged to her. Some payments had been made by her to the doctor at the time of the trial.

The first question to be decided is, Did the court err in permitting plaintiff to show the condition of the sidewalk in front of the lot at other places than where the plaintiff's testimony tended to show she was injured? It is claimed by defendant that, where the defect which caused the injury can be definitely pointed out, the evidence as to defects must be confined to the hole which caused the injury; citing *Dundas* v. *City of Lansing*, 75 Mich. 499 (42 N. W. 1011, 5 L. R. A. 143, 13 Am. St. Rep. 457); *Tice* v. *Bay City*, 78 Mich. 209 (44 N. W. 52); *Campbell* v. *City of Kalamazoo*, 80 Mich. 655 (45 N. W. 652). It was the claim of the plaintiff that, at the place where she was injured, there was a plank out of the walk, and another broken in two, the broken ends resting on the ground between the stringers, and the planks and the stringers were rotten. The declaration, after describing the walk, alleged that the city—

"Knowingly and negligently permitted the same to become out of repair, and to continue out of repair, and to become and remain unsafe and unfit for public travel for a long space of time, to wit, six months, prior to said 29th day of October, and that during all of said time the boards,

planks, and stringers of said sidewalk upon the west side of said Stone street, between Congress and Union avenues, were in a condition not reasonably safe and fit for public travel, in that the planks and boards of that portion of said sidewalk were decayed, rotten, loose, shaky, torn up, unfastened, broken, and displaced, and in an unsafe and dangerous condition for the public to travel upon."

Under the repeated decisions of this court, we think the testimony was competent for the purpose of charging the defendant with notice of the condition of the walk. *Strudgeon* v. *Village of Sand Beach*, 107 Mich. 496 (65 N. W. 616); *Will* v. *Village of Mendon*, 108 Mich. 251 (66 N. W. 58); *Canfield* v. *City of Jackson*, 112 Mich. 120 (70 N. W. 444); *Haynes* v. *City of Hillsdale*, 113 Mich. 44 (71 N. W. 466); *Rodda* v. *City of Detroit*, 117 Mich. 412 (75 N. W. 939).

The next question calling for our attention is, Was the trial judge justified in submitting to the jury the question of fact whether the plaintiff was entitled to recover the medical expenses for treatment of her injuries? Upon this feature of the case the judge charged the jury as follows:

"Now, in addition to such damages, if you find any, you may consider in connection with the question of the loss of services and her doctors' bills; and I will say to you if you find, by a preponderance of the evidence in the case, that the plaintiff has paid, or has agreed to pay, the charges for medical treatment for the injuries which she sustained by reason of the negligence of the defendant, out of her own personal estate, and that such expenses were charged to her individually, and she was given sole credit for the same, she would be entitled to recover such sum so expended or incurred for such medical treatment. * * * But before you can allow her anything for her medical treatment and for her loss of services, you must find that the agreement existed between her and her husband that she should have her earnings; and, on the question of her doctors' bills, you must find first that the credit was given to her solely and individually, without any expectation of coupling somebody else with her in paying the doctors' bills."

The charge of the court was in harmony with the decisions of this court. *Hirshfield* v. *Waldron*, 83 Mich. 116 (47 N. W. 239); *Meads* v. *Martin*, 84 Mich. 306 (47 N. W. 583); *Lacas* v. *Railway Co.*, 92 Mich. 412 (52 N. W. 745); *Lammiman* v. *Railway Co.*, 112 Mich. 602 (71 N. W. 153); *Lempke* v. *Felcher*, 115 Mich. 37 (73 N. W. 17).

There was testimony justifying the verdict. The other assignments of error do not call for discussion.

Judgment is affirmed.

The other Justices concurred.