GILSON v. CITY OF CADILLAC.

134    189
137   ¹668
134    189
142   ¹142

1. MUNICIPAL CORPORATIONS — DEFECTIVE SIDEWALKS — INSTRUCTIONS—HARMLESS ERROR.
   While an instruction that a city is bound to use all reasonable care and caution and supervision to keep its sidewalks in safe condition for travel is erroneous, the case will not be reversed where it appears that the jury were also told that the city was only required to keep its sidewalks in a condition reasonably safe for public travel, and not absolutely safe from accident.

2. PERSONAL INJURIES—MEASURE OF DAMAGES—MARRIED WOMEN.
   A charge that a married woman may recover damages for all the consequences of a personal injury sustained by her, future as well as past,—bodily pain, nursing and medical attendance,

personal inconvenience, sickness, mental suffering, disfigurement, and loss of time in the transaction of her own individual business,—is not open to the objection that it permits her to recover for loss of services which belong to her husband.

3. SAME—MEDICAL ATTENDANCE.
    In an action by a married woman for personal injuries, she cannot recover for the services of a physician whom she did not employ.

Error to Wexford; Chittenden, J. Submitted April 10, 1903. (Docket No. 16.) Decided July 14, 1903.

Case by Lillie Gilson against the city of Cadillac for personal injuries caused by a defective sidewalk. From a judgment for plaintiff, defendant brings error. Affirmed conditionally.

*Fred S. Lamb* (*E. Eugene Haskins*, of counsel), for appellant.

*Sawyer & Bishop*, for appellee.

MOORE, J. This action was brought by the plaintiff, a married woman, to recover for personal injuries alleged to have been received by her on the 15th day of September, 1901, by reason of a defective sidewalk in the city of Cadillac. The case was tried by a jury, who gave her a substantial verdict. The case is brought here by writ of error.

There are many assignments of error, all of which have had our attention, but we deem it unnecessary to discuss all of them. Complaint is made of that portion of the general charge reading as follows:

"The court instructs you further that the defendant corporation, the city of Cadillac, is bound by law to use all reasonable care and caution and supervision to keep its streets and sidewalks in safe condition for travel in the ordinary modes of traveling by night as well as by day, and, if it fails to do so, it is liable for injuries sustained in consequence of said failure, providing the party injured is herself exercising reasonable care and caution."

This is not a correct statement of the law, but the judge gave other instructions in relation to that feature of the case.   Among other things, he said:

" If the jury believe from the evidence that the plaintiff was injured by reason of the defendant's negligence in failing to keep its sidewalks in reasonably good repair, or negligently allowing the same to remain in an unsafe condition, as explained in these instructions, and without fault on her part that she has sustained damage, then the jury have a right to find for her."

" The defendant requests the court to charge, and I do charge you, that the law only imposes upon the city the duty to keep its sidewalks in a condition reasonably safe for public travel.   The city is not an insurer against accident, nor is it required to make its walks absolutely safe from accident; and the fact of an injury to a person passing upon the walk is not, in and of itself, evidence that the walk was not reasonably safe and fit for public travel."

We do not think the jury could have labored under any misapprehension as to the duty of the city.

Complaint is made of the following portion of the charge:

"I further instruct you that, in estimating the compensatory damages in cases of this character, all the consequences of the injury, future as well as past, are to be taken into consideration, including the bodily pain which is shown by the proofs to be reasonably certain to have naturally resulted from the injury."

It is said the labor of the plaintiff belongs to her husband, that inability to labor was a consequence of the injury, and for this the plaintiff was not entitled to recover damages.   To understand the effect of the charge, more than a few isolated sentences should be read.   Immediately following the excerpt given above, and as part thereof, the court said:

"The injured party, when entitled to recover, should be awarded compensation for all the injuries, past and prospective.   These are intended to include and embrace indemnity for actual nursing and medical expenses which were paid by the plaintiff.   The elements of damages which the jury are entitled to take into account consist of

all the effects of the injury complained of, consisting of personal inconvenience, the sickness which the plaintiff has endured, all bodily and mental suffering, the disfigurement or permanent annoyance which is liable to be caused by the deformity resulting from the injury; and, in considering what would be a just sum in compensation for the suffering from the injury, the jury are not only at liberty to consider the bodily pain, but the mental suffering, anxiety, and suspense, which may be treated as elements of the injury, for which damages, by way of compensation, should be allowed. And all these last-mentioned elements of damage are, in their very nature, not susceptible of any precise or exact computation. The determination of the amount is committed to the judgment and good sense of the jury, and, if you find for the plaintiff, such sum should be awarded as will fairly and fully compensate her for all damages which she has sustained, consisting of the elements referred to, and not exceeding in amount the sum claimed in the declaration."

The judge also charged the jury, after instructing them as to the circumstances which would entitle the plaintiff to recover:

"Then the jury have a right to find for her in such an amount of damage as they believe, from the evidence, will compensate her for the personal injury she has sustained, and for her loss of time in the transaction of her own individual business, and in endeavoring to be cured of her injury, so far as that expense has been borne by her individually, and any such loss and expense as has been sustained and paid by her or incurred by her, for all pain and suffering which she has already endured, and which she may endure hereafter, and for any permanent injury that is sustained, if the proofs are sufficient to convince this jury that her injury is permanent."

We think the jury were given to understand very clearly that it was only for loss of time in connection with her own business she was entitled to recover.

The husband, after the injury, called a Dr. Ralston, who later called in a Dr. McMullen, who procured a brace for the plaintiff, and who charged her, for the brace and his treatment, $50. It is said this is an improper charge, as the plaintiff is a married woman living with her husband. The plaintiff testified, among other things:

" I was perfectly sound before I was hurt. I had no malady or disease. My ankle was perfectly well. I am a housekeeper. I do most of my own work, though I never have to fetch any wood or anything of that kind. I have two little girls. I kept a hired girl four weeks after the accident. I paid for it. It was my money. Dr. McMullen got the brace on my limb for me. I haven't got it paid for. I purchased the brace. I ordered the brace. It cost $10."

The doctor testified about his being called into the case, and the treatment he gave her, and further testified:

"I believe the injury is permanent, so far as present conditions are concerned. I believe it is a condition that will always exist. I had a bill for my services. I charged it to Mrs. Gilson. The treatment and brace I got for her was $50."

Upon cross-examination by defendant's counsel, witness testified as follows:

" *Q.* How did you come to charge it to her?
" *A.* Well, she was the only one I met over there, and I naturally concluded, after I heard her statement, that the city, in all probability, would have to pay that bill, and therefore I charged it to her.
" *Q.* Has she paid it?
" *A.* No, sir.
" *Q.* Has she paid any part of it?
" *A.* No, sir.
" *Q.* Now, was that the only reason that you know of why you charged it to her?
" *A.* That is the only reason I had."

In *Campbell* v. *White,* 22 Mich. 178, it was held that a wife living with her husband could be held liable for necessaries used by the members of the husband's family. To the same effect is *Howe* v. *North,* 69 Mich. 272 (37 N. W. 213). In *Fafeyta* v. *McGoldrick,* 79 Mich. 360 (44 N. W. 617), it was held that a married woman residing with her husband may make herself liable for a suit of clothes purchased for her minor son. To the same effect are *Hirshfield* v. *Waldron,* 83 Mich. 116 (47 N. W. 239);

*First Commercial Bank of Pontiac* v. *Newton*, 117 Mich. 433 (75 N. W. 934). In *Wolcott* v. *Patterson*, 100 Mich. 227 (58 N. W. 1006, 24 L. R. A. 629, 43 Am. St. Rep. 456), it was held that a married woman may make herself chargeable with the value of the services rendered by an attorney in a divorce suit brought by her. The court said, among other things:

"It has also been held in this State that a married woman is competent to assert her rights either as plaintiff or defendant, and, where a suit is brought against her as defendant, is bound to do so. *Wilson* v. *Coolidge*, 42 Mich. 112 (3 N. W. 285). It would seem to follow logically that, having the power to bring suit, and being in such suit responsible for costs, she must be held competent to contract for the services of an attorney to represent her rights. We think the right to contract for such services is necessarily incident to and included in her right to bring suit."

In *Goodman* v. *Shipley*, 105 Mich. 439 (63 N. W. 412), it was held that a married woman may make herself liable for services and medicines furnished to her and her minor daughter by a physician. See *Lammiman* v. *Railway Co.*, 112 Mich. 602 (71 N. W. 153).

In cases of this character the authorities are uniform that the wife may recover for any illness which follows as the result of such injury. It would be strange indeed if she might not employ a physician to shorten the term of such illness.

In this case, while the record discloses that the plaintiff purchased the brace, it does not show that she employed the physician and agreed to pay him. Had she done so, we think it would have been a proper item for which she could have recovered damages. From the charge of $50, made by the doctor for the brace he furnished and his services, should be deducted the purchase price of the brace, $10, leaving $40, which is improperly included in the judgment. In case the plaintiff, within 20 days, remits the $40, the judgment as to the balance will be

affirmed; otherwise the judgment will be reversed, and a new trial ordered.   Neither party will recover costs.

HOOKER, C. J., CARPENTER and MONTGOMERY, JJ., concurred.   GRANT, J., did not sit.