## JUNE *v.* LABADIE.

1. LOST LETTERS—PAROL EVIDENCE.
   Where defendant gave plaintiff notice to produce all letters written by her to plaintiff between certain dates, evidence that she had written letters not produced, and destroyed some of those received by her at plaintiff's request, sufficiently accounts for the loss of the letters to justify parol evidence of their contents.

2. CONTRACTS—MARRIED WOMEN—SEPARATE ESTATE.
   A contract by a married woman to pay for the board of an adult sister and her children does not relate to her separate estate, and is void.

3. INSTRUCTIONS TO JURY—PROMISSORY NOTES—MAKER AND INDORSER.
   In an action on a promissory note against the maker and indorser, an instruction which assumes that the defendants are sued as joint makers is erroneous.

4. SAME—WANT OF EVIDENCE.
   An instruction that a certain agreement to pay for the board of

a third person would constitute a set-off against a promissory note should not be given where there is no evidence to support such an agreement.

Error to Wayne; Rohnert, J. Submitted November 21, 1902. (Docket No. 113.) Decided January 6, 1903.

*Assumpsit* by Mary J. June against Sophie E. Labadie and Joseph A. Labadie on a promissory note. From a judgment for defendants, plaintiff brings error. Reversed.

Plaintiff and defendant Sophie are sisters. The suit was commenced in justice's court upon a promissory note, which reads as follows:

"$142.04.        DETROIT, MICH., January 2d, 1893.

" One year after date I promise to pay to the order of Mary J. June one hundred and forty-two and 04/100 dollars, at 74 Buchanan street, Detroit, Mich., with interest at six per cent. per annum. Value received.
        [ Signed ].        " SOPHIE E. LABADIE."

It was indorsed, "This note is to replace one of like purpose and amount that has been lost." It was also indorsed by the defendant Joseph, Sophie's husband. Under an appeal to the circuit court, a jury rendered a verdict for defendants.

*A. G. Pitts*, for appellant.

*John W. McGrath*, for appellees.

GRANT, J. (*after stating the facts*). 1. Plaintiff lived in New York and defendants in Detroit. The main defense is a set-off for the board of a Mrs. Kelly, their sister, and her children. Defendants claim an agreement made by letters between Sophie and the plaintiff, by which the plaintiff agreed to pay $5 a week for the board of Mrs. Kelly and her children, and that they boarded with her 84 weeks. Defendants gave plaintiff notice to produce all letters written by defendants, or either of them, to her between September 1, 1895, and May 8, 1897. In obedi-

ence to such notice certain letters were produced. Defendants also produced certain letters written by plaintiff to defendant Sophie. These letters are not of themselves sufficient to establish the contract claimed. Defendant Sophie was then permitted, under objection, to state the contents of other letters written by her to the plaintiff and those received by her from the plaintiff. She testified that she destroyed most of the letters received from the plaintiff because plaintiff requested her to do so. She stated the contents of one of them as follows:

"In the letter she said that they [meaning Mrs. Kelly and her children] could stay with me, and make a visit, and it would not cost me any more for rent, and she would pay $5 a week for whatever they would eat, so that my husband would not be any money out of pocket."

Witness then continued:

"I replied, under those conditions they could come; and they came, and remained a year and nine months."

Plaintiff denied writing such a letter or receiving such a letter from the defendant. While such testimony of written documents is very unsatisfactory, yet we think their loss was sufficiently accounted for to justify parol evidence of their contents. It is also urged that there was no proof that these letters were mailed, and that, therefore, the testimony was incompetent. As the case will be reversed upon other points, we need not determine this.

2. The court should have instructed the jury that the plaintiff, being a married woman, had no power to make the contract which defendants claim. It had no reference to her separate estate. It did not provide any consideration moving to her. She was to receive nothing. The married woman's act does not remove from her all disability to make contracts. It removes only the disability to make those which relate to her separate estate. She may make a valid contract with a physician for medical services to be rendered to herself and her daughter by a

former marriage. Such contract is for her benefit. *Goodman* v. *Shipley*, 105 Mich. 441 (63 N. W. 412). She may bind herself and her estate by the purchase of goods for her minor children (*Hirshfield* v. *Waldron*, 83 Mich. 116 [47 N. W. 239] ), and for necessaries purchased for family use (*Campbell* v. *White*, 22 Mich. 178). In these cases the title to the goods passed to her, and became her separate property.

"Her promise to pay must be based on a consideration in the shape of property. She has no power to make contracts except concerning her separate estate, which must be either by making agreements concerning property already possessed, and referring to it, or else concerning property acquired by the contract, or in consideration of it." *Johnson* v. *Sutherland*, 39 Mich. 579, 580.

In this case no property passed. Her estate was not to be benefited. She was under no legal obligation to take care of her sister. The contract, by no possibility, could benefit her or her estate. It was a contract simply to pay out money for another to the depletion of her estate. Such contracts are not within the married woman's act.

3. The court instructed the jury as follows:

"If you should not be satisfied from the evidence that this is a loan made by Mary June to Sophie Labadie individually— If you are satisfied that it was individual, that the consideration was to her individually, then the plaintiff is entitled to recover; but if you determine that the loan was made to Sophie E. Labadie and Joseph Labadie for the benefit of both of them, then there cannot be a recovery on this note, because, it being sued against them jointly, there is a joint obligation, which can only be sustained in case you find that the obligation, so far as Labadie is concerned, was simply that of an additional guarantor; that is, by finding that the consideration passed to Sophie Labadie for herself."

The principle of law involved in this instruction may be correctly stated. The vice of the instruction lies in the facts assumed. I find no evidence in the record that this loan was made to the two jointly, or that the defendants

were sued as joint makers, or that they were in fact joint makers. *Prima facie* one was maker and the other indorser. The only reference in the record to the declaration is found in the justice's return in the following language:

"The plaintiff declares in *assumpsit* on all the common counts, and especially on a promissory note filed."

This is not a declaration against the defendants as joint makers, but as maker and indorser.

The alleged contract for board was not made with the two defendants jointly. The contents of the lost letters, as testified to by Sophie, which it is claimed established the contract, contain no reference whatever to any promise on the part of plaintiff to Joseph. They refer solely to a personal transaction between the two sisters. The only defense interposed is, Was there a contract for the board of Mrs. Kelly, made between plaintiff and defendant Sophie? If there was, and it was valid, the offset was sufficient to defeat a judgment. Any defense found valid against the maker of course releases the indorser. Under the present record defendant Sophie is maker of the note and defendant Joseph is liable as indorser.

4. The court instructed the jury that if Mrs. Kelly, Mrs. June, and Mrs. Labadie made an arrangement by which Mrs. Kelly was to board with Mrs. Labadie, and Mrs. June agreed to pay $5 a week for it, such a contract would be binding, and sustain the defendants' set-off. Plaintiff's counsel conceded that, if this were the arrangement, it would be binding. The objection to the instruction is that there is no evidence upon which to base it, and we find none in the record.

Judgment reversed, and new trial ordered.

The other Justices concurred.